IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

JOHN P. CREED,                      )
                                    )
        Plaintiff,                  )
                                    )
             v.                     )      1:08cv862 (JCC)
                                    )
COMMONWEALTH OF VIRGINIA            )
et al.,                             )
                                    )
        Defendants.                 )

**M E M O R A N D U M   O P I N I O N**

        This matter comes before the Court on Plaintiff Creed's

Objection to Removal and Motion to Remand, and the Motion to

Remand filed by Defendant Commonwealth of Virginia (the

"Commonwealth").  For the reasons stated below, the Court will

**grant** both motions.

## I.  Background

        Plaintiff John Creed ("Plaintiff") brought this suit

after his son, William Creed ("Creed"), died while in custody at

the Prince William-Manassas Regional Adult Detention Center (the

"ADC").  Plaintiff filed an amended complaint (the "Complaint")

in the Circuit Court of Prince William County, Virginia, on June

30, 2008.  The Complaint alleges that Creed, who was detained for

larceny and was exhibiting signs of mental instability, became

combative and resistant during a medical examination before his

planned transfer from the ADC to Western State Hospital for

1

involuntary commitment.  Def.'s Pet. for Removal, Ex. A, at ¶¶ 31-33.  Several unknown John Does, also named as defendants, restrained Creed.  The Complaint alleges that he was placed into a choke hold and then stopped breathing.  *Id*. at ¶ 34.  The autopsy report gave Creed's cause of death as "acute stress-induced cardiac arrhythmia due to acute restraint-induced asphyxia and blunt trauma."  *Id*. at ¶ 38.

Plaintiff filed suit against the Commonwealth, Prince William County Sheriff Glendell Hill ("Hill"), ADC Superintendent Charles Land ("Land"), ADC Director of Inmate Services Peter Meletis ("Meletis"), and various unknown John Does ("John Doe Defendants") (collectively, "Defendants").  The suit contains five counts: (I) negligence, against the Commonwealth, filed through the Virginia Tort Claims Act (the "VTCA" or the "Act"), Va. Code Ann. § 8.01-195.1 et seq.; (II) gross negligence, against Defendants; (III) willful and wanton negligence, against Defendants; (IV) claims under 42 U.S.C. § 1983, against the John Doe Defendants; and (V) supervisory liability claims under 42 U.S.C. § 1983, against Hill, Land, and Meletis.  *Id*. at ¶¶ 44-64. Plaintiff seeks $20,000,000 in compensatory damages, plus punitive damages, costs, and attorneys' fees.  *Id*. at 15.

On August 21, 2008, Defendants Hill, Land, and Meletis (collectively, the "Individual Defendants") filed a Petition for Removal under 28 U.S.C. §§ 1331, 1441, 1443, and 1446.

Jurisdiction in this Court is founded on the Plaintiff's federal claims and the federal questions arising therefrom.  The Individual Defendants argue that because the Commonwealth and John Doe Defendants are only nominal parties, they do not need their consent to remove the case from state court.  Pet. for Removal at ¶¶ 7-9.

The Commonwealth does not consent to removal.  On August 26, 2008, it filed an objection to removal and a Motion to Remand.  Plaintiff also objected to removal and, on September 18, moved for a remand.  The Individual Defendants submitted a separate Opposition to each motion.  After oral argument on the motions, the Individual Defendants filed an affidavit further supporting their removal petition; Plaintiff responded with additional legal arguments, the Individual Defendants filed a reply, and Plaintiff ended the exchange with a sur-reply.  The motions to remand are before the Court.

## II. Analysis

Plaintiff and the Commonwealth raise overlapping arguments in their objections to removal.  Each is rooted in the impropriety of removing the case without the consent of the Commonwealth.  The Commonwealth objects to removal because, it argues, this Court cannot take jurisdiction over the claim brought against it under the VTCA for sovereign immunity reasons. The Commonwealth also raises a related Eleventh Amendment

argument against removal.  Plaintiff expands on both of the Commonwealth's arguments and contends that the case cannot be removed because the Commonwealth did not consent to removal.[1]

    A. <u>The Rule of Unanimity and the Exception for "Nominal"</u>

       <u>Parties</u>

Under 28 U.S.C. § 1446(a), "[a] defendant or defendants desiring to remove any civil action or criminal prosecution from a State court shall file in the district court of the United States for the district and division within which such action is pending a notice of removal."  Courts construe the removal statute strictly because removal, by its nature, infringes upon state sovereignty.  *See Bellone v. Roxbury Homes, Inc.*, 748 F. Supp. 434, 436 (W.D. Va. 1990); *see also Crockett v. Gen. Motors Corp.*, 2008 WL 5234702, at *2 (E.D. Va. Dec. 15, 2008).

Generally, all defendants must unanimously join or consent to removal within thirty days of being served with the initial pleadings.  28 U.S.C. § 1446(b); *Unicom Systems, Inc. v. Nat'l Louis Univ.*, 262 F. Supp. 2d 638, 640 (E.D. Va. 2003); *see Chicago, R.I. & P.R. Co. v. Martin*, 178 U.S. 245 (1900).  This "rule of unanimity" requires that each defendant "register to the Court its official and unambiguous consent to a removal petition

---

[1] Removal does not require the consent of the John Doe Defendants.  The general rule that all defendants must consent is disregarded when the non-joining defendants are unknown.  *See Green v. America Online*, 318 F.3d 465, 470 (3d Cir. 2003) (citation omitted).

filed by a co-defendant."  *Stonewall Jackson Mem'l Hosp. v. Am.*
*United Life Ins. Co.*, 963 F. Supp. 553, 558 (N.D. W.Va. 1997).

One exception to the rule of unanimity is that the
defendant seeking removal does not need the consent of a co-
defendant present in the case as "merely a nominal or formal
party."  *Bellone*, 748 F. Supp. at 436-37.  The party seeking
removal has the burden of proving that the objecting party is
merely nominal.  *See Blue Mako, Inc. v. Minidis*, 472 F. Supp. 2d
690, 696 (M.D.N.C. 2007) (citing 14C Wright et al., Federal
Practice and Procedure § 3731, at 270-71 (3d ed. 1998)).

In this case, the Commonwealth does not consent to
removal.  Whether removal is proper, then, turns on whether the
Commonwealth should be considered "merely a nominal or formal
party," or, instead, a real party in interest whose failure to
join the petition for removal requires the Court to remand the
case to the Virginia Circuit Court.  *Id*. at 437.  Plaintiff
argues that the Commonwealth is more than a nominal party because
it is subject to liability under the VTCA.  The Commonwealth,
while agreeing with the Individual Defendants that ultimately it
should not be held liable in the case, asserts that it is more
than a nominal party because the procedural posture of the case
puts its sovereign immunity into issue.

The Fourth Circuit has not defined "nominal party" for
removal purposes.  *See Allen v. Monsanto Co.*, 396 F. Supp. 2d

728, 732 (S.D. W.Va. 2005).  Other courts have employed a variety of definitions.  The Fifth Circuit has identified a nominal party as one serving solely as a "depositary or stakeholder;" whether a defendant party is nominal, the court explained, depends on the facts of each case.  *Tri-City Newspapers, Inc. v. Tri-City Printing Pressmen and Assistants' Local 349*, 427 F.2d 325, 327 (5th Cir. 1970) (quotation omitted).  The same court subsequently held that a party was "nominal" where there was no possibility that the plaintiff could establish a cause of action against it in state court.  *Farias v. Bexar Cty. Bd. of Trustees for Mental Health Mental Retardation*, 925 F.2d 866, 871 (5th Cir. 1991) (quotation omitted); *see also Norman v. Cuomo*, 796 F. Supp. 654, 658 (N.D.N.Y. 1992) (citations omitted).

In *Shaw v. Dow Brands, Inc.*, 994 F.2d 364, 369 (7th Cir. 1993), the Seventh Circuit stated that "a defendant is nominal if there is no reasonable basis for predicting that it will be held liable."  The Eighth Circuit has defined nominal defendants as those "against whom no real relief is sought." *Thorn v. Amalgamated Transit Union*, 305 F.3d 826, 833 (8th Cir. 2002) (quotation omitted).  Examples of a nominal party include a party with no assets or one that does not actively engage in business, *Egle Nursing Home, Inc. v. Erie Ins. Group*, 981 F. Supp. 932, 933 (D. Md. 1997) (citations omitted), a garnishee with no real interest in the litigation, *Kiddie Rides USA, Inc.*

*v. Elektro-Mobiltechnik GMBH*, 579 F. Supp. 1476, 1480 (D. Ill. 1984), or an incidental party – one not concerned with who actually wins the suit, *Selfix, Inc. v. Bisk*, 867 F. Supp. 1333, 1335-36 (N.D. Ill. 1994) (citations omitted).

Within this Circuit, the nominal party inquiry has been interpreted to turn on whether there is any "legal possibility for predicting" that the party could be held liable. *Allen*, 396 F. Supp. 2d at 733; *see also Blue Mako, Inc.*, 472 F. Supp. 2d at 696; *Mayes v. Moore*, 367 F. Supp. 2d 919, 921-22 (M.D.N.C. 2005). One test used by district court in this Circuit to determine whether a party is "nominal" asks whether a court would be able to enter a final judgment favoring the plaintiff in the absence of the purportedly nominal defendant without materially affecting the relief due to the plaintiff. *Blue Mako, Inc.*, 472 F. Supp. 2d at 696 (citing *Mayes*, 367 F. Supp. 2d at 922). In summary, the central inquiry appears to be whether, looking at the facts of the case as they appear at the preliminary stage of a petition for removal, the party in question is in some manner genuinely adverse to the plaintiff.

B. <u>Whether the Commonwealth is a Nominal Party</u>

The Complaint alleges that the ADC is an "agency" of the Commonwealth, as defined by the VTCA. The VTCA provides a limited waiver of sovereign immunity from suit. This waiver applies to, among other claims, those for "personal injury or

death caused by the negligent or wrongful act or omission of any employee while acting in the scope of his employment under circumstances where the Commonwealth . . . if a private person, would be liable."  Va. Code Ann. § 8.01-195.3.  The statute defines "Employee" as "any officer, employee or agent of any agency, or any person acting on behalf of an agency in an official capacity, temporarily or permanently in the service of the Commonwealth."  *Id*. at § 8.01-195.2.  An "Agency" is "any department, institution, authority, instrumentality, board or other administrative agency of the government of the Commonwealth of Virginia."  *Id*.  Plaintiff alleges that employees of the ADC caused Creed's death.  Thus, if the ADC is an "agency" under the terms of the VTCA, Virginia could be liable for wrongs committed by the ADC's employees.

The Court finds that the Commonwealth is not a nominal party to this action and that removal was improper.  First, at this time the Court cannot say that the Commonwealth could not possibly be liable without a full ruling on the merits as to the status of the ADC as an "agency" under Virginia state law.  Thus, there is a "legal possibility" that the Commonwealth could be liable.  Second, removal would raise serious federalism concerns and infringe on the sovereign immunity of the Commonwealth, which has objected to this Court's exercise of removal jurisdiction. Even if the Court were to ultimately decide that the Commonwealth

could not be liable under the VTCA, doing so would require the Court to assert jurisdiction over the Commonwealth based on a state statute that waives sovereign immunity only in state court. Because the Court does not find the Commonwealth to be a nominal party, and the Individual Defendants did not obtain the Commonwealth's consent for removal, the case will be remanded to the Virginia Circuit Court.

At this stage of the litigation, it is not clear that there is no "legal possibility" that the Commonwealth could be liable for the actions of the ADC's employees.  Indeed, even under the more permissive test outlined in *Shaw v. Dow Brands, Inc.*, a "reasonable basis" exists for predicting that the Commonwealth could be liable.  994 F.2d 364, 369 (7th Cir. 1993).

The Individual Defendants argue that under Virginia law, the ADC is not an "agency" as that term is defined in the VTCA.  In support, they rely primarily on *Kitchen v. Upshaw*, 286 F. 3d 179, 184 (4th Cir. 2002), which held that a Regional Jail Authority in Virginia was not an "arm of the state" for Eleventh Amendment purposes.  Whether a Regional Jail Authority – not, as in this case, the jail itself – is an "arm of the state" for Eleventh Amendment purposes, however, does not conclusively determine whether the ADC is or is not an "agency" under the VTCA.  The Eleventh Amendment inquiry is not necessarily synonymous with the inquiry into whether the ADC is a

"department, institution, authority, instrumentality, board or other administrative agency of the government of the Commonwealth of Virginia." Va. Code Ann. § 8.01-195.2. Indeed, no party submitted any Virginia case law regarding the "agency" status of an ADC-like jail under the VTCA, and this Court was unable to locate any such authority. The precise question of the ADC's status as an "agency" under the VTCA was, however, squarely before the Virginia circuit court hearing this case before the action was removed.[2]

In these circumstances, whether the Commonwealth was properly named to the lawsuit turns on a contested question of Virginia statutory interpretation – a question that was before a Virginia state court until the Individual Defendants filed their Petition for removal. The Commonwealth had and continues to have a definite interest in this case. Whether it may be liable for money damages for Creed's death depends on an as-yet-unanswered question about the scope of the VTCA, an Act providing a cause of action that can be heard only in Virginia courts. Va. Code Ann. § 8.01-195.4. At no point in the litigation was the Commonwealth a placeholder, an incidental party to the litigation, or a party "against whom no real relief is sought." *Thorn v. Amalgamated*

---

[2] Before the Individual Defendants filed their Petition for Removal, the Commonwealth had submitted a Plea of Sovereign Immunity and Demurrer to the state court. The Plea and Demurrer addressed the question of the ADC's status as an "agency" under the VTCA. Commonwealth's Mem. in Supp., Ex. B. The Virginia court took no action on the Commonwealth's Plea because the removal petition stripped it of jurisdiction over the case.

*Transit Union*, 305 F.3d 826, 833 (8th Cir. 2002) (quotation omitted).

What the Individual Defendants really request, then, is a determination, on the merits, that the ADC is not an "agency" under the VTCA.  An opposition to a motion for a remand is not the proper place for such a determination.  Indeed, that the Individual Defendants require a finding on unsettled Virginia law to show that the Commonwealth is a "nominal" party significantly weakens their argument.  Other courts have determined that parties were "nominal" where, for example, the causes of action asserted against them were clearly unavailable as a matter of law, *Farias*, 925 F.2d at 872, the complaint did not contain any allegations implicating the non-removing party, *Michaels v. State of N.J.*, 955 F. Supp. 315, 319 (D. N.J. 1996), or the cause of action required "owner[ship]" and the evidence unquestionably showed that the non-removing party was not an "owner," *Zerafa v. Montefiore Hosp. Housing Co.*, 403 F. Supp. 2d 320, 325-27 (S.D.N.Y. 2005).  The Individual Defendants did not cite any case in which a court resolved a new question of law en route to finding a party "nominal."

In an oft-cited case, the Fifth Circuit in *Farias* required a removing party to that there was no possibility that the plaintiff could establish a cause of action against the non-removing defendants in state court to establish their status as

"nominal" parties.  925 F.2d at 871.  When Plaintiff filed this
suit, it was by no means "impossible" for him to establish a
cause of action against the Commonwealth.  In fact, the question
whether he could do so has sparked vigorous litigation, with each
side pointing to factors that could lead a court to ascribe
"agency" status to the ADC under the VTCA.

        If there was controlling Virginia precedent on the
status of a jail like the ADC, it is possible that the question
whether the Commonwealth was "nominal" would be foreclosed.  As
the case stands now, however, the Court finds that the
Commonwealth is not a "nominal" party.  The question about the
nominal status of the Commonwealth is, in any event, seriously
doubtful.  If doubts exist as to the propriety of removal, they
should be resolved in favor of remanding the action back to state
court.  *See Dixon v. Coburg Dairy, Inc.*, 369 F.3d 811, 816 (4th
Cir. 2004) (en banc) (stating that removal jurisdiction must be
construed strictly because it implicates significant federalism
concerns).  For this reason, the Court will remand the case back
to the state court.

   C. Sovereign Immunity

        Federalism concerns implicated by the Commonwealth's
potential liability under the VTCA underscore the propriety of
remanding the case back to the state court.  Whether the
Commonwealth can be liable for the actions of the ADC's employees

under the VTCA depends on the construction of a statute that

commits all causes of action brought under it exclusively to the

Virginia courts.  Any decision rendered by this Court on the

breadth of the VTCA necessarily intrudes on the Commonwealth's

interest in defining the scope of its waiver of sovereign

immunity.  The Court will not make such a decision when the

circumstances do not require it to do so.

The Commonwealth argues that the Court should not allow

the removal of the case because the Court cannot take and decide

a claim under the VTCA.  Normally, a defendant may remove "any

civil action brought in a State court of which the district

courts of the United States have original jurisdiction."  28

U.S.C. § 1441(a).  "The propriety of removal thus depends on

whether the case originally could have been filed in federal

court."  *City of Chicago v. Int'l College of Surgeons*, 522 U.S.

156, 163 (1997) (citing *Caterpillar Inc. v. Williams*, 482 U.S.

386, 392 (1987)).  A complaint that contains a federal claim is a

"civil action" within the original jurisdiction of the federal

courts.  *Int'l College of Surgeons*, 522 U.S. at 166.  In

*International College of Surgeons*, the Supreme Court explained

that raising a claim based on federal law, or one based on state

law that necessary involves a substantial question of federal

law, subjects a plaintiff's case to possible removal.  *Id*. at

164.  When a case involving a federal claim is removed, related

state claims also can be removed because the federal court can

exercise supplemental jurisdiction over them pursuant to 28

U.S.C. § 1367.

Federal law, however, also requires a district court to

remand a removed case from state court if, "at any time before

final judgment," it appears to lack subject matter jurisdiction.

28 U.S.C. § 1447(c).  Federal removal statutes are strictly

construed against the party seeking removal.  If a court has

doubts about the propriety of removal, it should remand the

action.  *See Dixon v. Coburg Dairy, Inc.*, 369 F.3d 811, 816 (4th

Cir. 2004) (en banc).  Here, a federal court would have original

jurisdiction over Plaintiff's Complaint because it contains

federal claims.  The removal question is complicated, however, by

the presence of the claim brought under the VTCA.  In light of

the difficult jurisdictional and sovereign immunity problems that

taking jurisdiction over the VTCA claim would entail, remand to

state court is the wiser course.

The VTCA provides a limited waiver of Virginia's

sovereign immunity in its own courts.  "In the absence of express

statutory or constitutional provisions waiving immunity, the

Commonwealth and its agencies are immune from liability for the

tortious acts or omissions of their agents and employees."

*Baumbardner v. Sw. Va. Mental Health Inst.*, 442 S.E.2d 400, 401

(Va. 1994).  The VTCA provides an express, limited waiver of that

14

sovereign immunity and "must be strictly construed" because the

Act "is a statute in derogation of the common law."  *Id*. at 402.

The Act "waives sovereign immunity in some cases for

tort liability provided the suit is filed in State court."

*Reynolds v. Sheriff of Richmond*, 574 F. Supp 90, 91 (D. Va.

1983); *see McConnell v. Adams*, 829 F.2d 1319, 1329 (4th Cir.

1987) (citing *Reynolds* for the proposition that the VTCA waives

sovereign immunity "for tort claims filed in state courts," but

does not waive Eleventh Amendment immunity).  The VTCA explicitly

limits jurisdiction over claims brought under the Act to Virginia

courts:

> *The general district courts shall have exclusive*
> *original jurisdiction to hear, determine, and*
> *render judgment on any claim against the*
> *Commonwealth* . . . when the amount of the claim
> does not exceed $4,500 . . . . Jurisdiction shall
> be concurrent with the circuit courts [for claims
> of between $4,500 and $10,000] . . . . Jurisdiction
> of claims when the amount exceeds $15,000 *shall be*
> *limited to* the circuit courts of the Commonwealth.

Va. Code Ann. § 8.01-195.4 (emphases added).  The Virginia

legislature consented to suit with the express provision that

such suits could be heard "exclusive[ly]" in Virginia courts.

The phrase "shall have exclusive original jurisdiction to . . .

render judgment" suggests that the claim must remain with a

Virginia court from inception to final judgment.  Thus, it does

not appear that a VTCA claim could be brought in a federal court

in the first instance.  Even if a district court could exercise

15

supplemental jurisdiction over it, such an assertion of

jurisdiction would violate the terms of the state's agreement to

limit its sovereign immunity.[3]  In the unique circumstance

presented by the VTCA, the Court believes that exercising

supplemental jurisdiction would unnecessarily infringe upon the

Commonwealth's sovereign immunity.

　　　While "[t]he whole point of supplemental jurisdiction

is to allow the district courts to exercise pendent jurisdiction

over claims as to which original jurisdiction is lacking," what

is lacking here is not just original jurisdiction over the VTCA

claim but, under the terms of the statute, the ability to hear

such a claim at all.  *Int'l College of Surgeons*, 522 U.S. at 167.

A district court's ability to take jurisdiction over a VTCA claim

is doubtful because the Virginia legislature has expressly

limited the jurisdiction over VTCA claims to Virginia state

courts.  It is unclear whether 28 U.S.C. § 1367, which allows for

supplemental jurisdiction, overcomes the sovereign immunity bar

to hearing a claim that the Commonwealth has only allowed state

---

[3] A federal court may exercise supplemental jurisdiction over claims "so
related to claims in the action within . . . original jurisdiction that they
form part of the same case or controversy under Article III."  28 U.S.C.
§ 1367(a).  While supplemental jurisdiction could be appropriate, for example,
when state law tort claims are brought against defendants in their personal
capacity, claims brought under the VTCA, though "related to claims in the
action within [the Court's] original jurisdiction," implicate the sovereign
immunity of the Commonwealth. Here, the limited waiver of the state's
sovereign immunity argues against a federal court's assertion of jurisdiction
over a VTCA claim.

courts to hear.[4]   28 U.S.C. § 1367.

The Individual Defendants point to the decision of one district court in this Circuit for the proposition that a federal court could take supplemental jurisdiction over a VTCA claim.  In *Morrissey v. Rockingham Mem'l Hosp.*, 2006 WL 297741, at \*5 (W.D. Va. Feb. 7, 2007), the court declined to exercise supplemental jurisdiction over a number of state law claims after it dismissed all of the related federal claims.  Before dismissing the state law causes of action, the court stated that jurisdiction over those claims – including the VTCA claim – "can only be predicated on 28 U.S.C. § 1367(a)."  *Id.*  The *Morrissey* court neither considered nor addressed the issue presented here in its cursory dismissal.  Its statement is insufficient to support an extension of supplemental jurisdiction over VTCA claims.  This Court is not aware of any district court that has exercised supplemental jurisdiction over a VTCA claim or concluded that it had subject matter jurisdiction over a VTCA claim.

The Court notes that the removal situation presented here differs from that in *Wisconsin Dept. of Corrections v.*

---

[4] Additionally, the federal claims in this suit are not "separate and independent" from the VTCA claim under 28 U.S.C. § 1441(c), which allows for a defendant to remove "separate and independent" federal claims along with otherwise non-removable claims joined with them.  "Where there is a single wrong to plaintiff, for which relief is sought, arising from an interlocked series of transactions, there is no separate and independent claim or cause of action under § 1441(c)."  *Am. Fire & Cas. Co. v. Finn*, 341 U.S. 6, 14 (1951). Here, all of Plaintiff's claims arise out of the alleged wrongful death of his son.  The claims are not "separate and independent."

*Schacht*, 524 U.S. 381 (1998).  In *Schacht*, the Supreme Court held that the presence of a claim barred by the Eleventh Amendment in an otherwise removable case would not strip a federal court of removal jurisdiction.  *Id*. at 386.  The Court reasoned that Eleventh Amendment immunity did not *automatically* destroy original jurisdiction in a way that would bar removal, because a state retains the option of waiving its Eleventh Amendment defense.  *Id*. at 389; *cf. Lapides v. Bd. of Regents of the Univ. Sys. of Ga.*, 535 U.S. 613, 620 (2002).  In other words, the Eleventh Amendment did not pre-emptively block jurisdiction when a state could decide to allow a federal court to hear the objectionable claim.

In the instant case, however, the jurisdictional bar arises out of the state legislature's pre-determination that only Virginia courts can hear VTCA claims.  In effect, the state has already spoken – by refusing to allow VTCA claims to be heard in any but its own courts.  The manner in which *Schacht* applies to the singular procedural circumstances in this case is at least ambiguous, and the Court has serious doubts concerning its ability to hear a claim brought under the VTCA.  Remanding the case allows a Virginia court to decide the VTCA issue and cures any jurisdictional bar that may exist.

The Individual Defendants suggest that granting a remand in this situation will encourage future plaintiffs to

insulate their federal claims from removal by adding VTCA claims against the Commonwealth to whatever federal claim they bring. The Court acknowledges the potential for such abuse of the VTCA cause of action.  The potential for abuse does not, however, override the jurisdictional problems inherent in the removal petition.  In addition, denying a remand in this situation would create equally perverse incentives.  A plaintiff bringing a valid VTCA claim in state court – as the VTCA requires – along with a valid federal claim, would face the opposite problem if the defendant removed the case to federal court: under the terms of the VTCA, the federal court would not be able to render judgment on the VTCA claim.  In short, the jurisdictional problems raised by the presence of the VTCA claim in the suit before the Court create serious doubts as to the propriety of removal.  Such jurisdictional doubts further support the Court's conclusion that the case should be remanded because of the Commonwealth's failure to consent to removal.

### III. Conclusion

For the reasons stated above, the Court will **grant** the Motions to Remand filed by the Commonwealth of Virginia and Plaintiff.

An appropriate Order will issue.

January 12, 2009                           _____/s/_____
Alexandria, Virginia                           James C. Cacheris
                                   UNITED STATES DISTRICT COURT JUDGE